## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| JASON MCCOOL, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| HI-TECH PHARMACEUTICALS, INC., | |
| Defendant. | |

## CLASS ACTION COMPLAINT

Jason McCool ("Mr. McCool" or "Plaintiff") brings this putative class action against Hi-Tech Pharmaceuticals, Inc. ("Hi-Tech" or "Defendant"). Plaintiff's allegations regarding his own experiences are based on his personal knowledge. Plaintiff's allegations regarding all other matters are based on information and belief, informed by counsel's reasonable investigation.

## I.    INTRODUCTION

1.    Hi-Tech obtains a dangerous foreign drug, packages it as a benign "dietary supplement," and sells it to unsuspecting U.S. consumers.

2.    The product in question is Somatomax. Hi-Tech markets Somatomax as a health aid that provides "enhanced sleep" and a "feeling of well-being," among other things. Hi-Tech labels Somatomax as a "dietary supplement" on its packaging.

3.     Though it is labeled as a "dietary supplement," Somatomax contains a highly addictive prescription drug: Phenibut.  Phenibut is a psychoactive sedative, similar to Xanax, that the Soviet Union developed in the 1960s.  And it can have serious side effects.  They include psychosis, hallucinations, delirium, seizures, comas, dependance, withdrawal, and overdose-related death.

4.     Phenibut is so dangerous, in fact, that several countries ban it.  And Alabama classifies it as a Schedule II controlled substance, like Fentanyl and Opium. More to the point, under U.S. state and federal law, it is illegal to sell Phenibut as a drug *or* as an ingredient in a dietary supplement.  Hi-Tech is blatantly breaking these laws by including Phenibut in Somatomax.

5.     Of course, on Somatomax's packaging, Hi-Tech does not tell its customers that its product contains an unlawful prescription drug (all it does is list Phenibut's scientific name—"4-amino-3-phenylbutyric acid"—as a Somatomax ingredient).  Nor does Hi-Tech warn its customers about Phenibut's dangers. Somatomax's packaging simply says that taking Somatomax "may result in dizziness, nausea, euphoria, and diarrhea."  While listing these tame potential side effects, the packaging fails to disclose Phenibut's numerous drastic side effects, like addiction, psychosis, coma, and death.

6.     To make matters worse, Somatomax's composition increases the likelihood that customers will suffer those drastic side effects, because the Phenibut

dose that Hi-Tech includes in Somatomax is recklessly high. In Russia, where it is still legal to sell Phenibut as a prescription drug, the maximum upper limit recommended for a single-serving dose is 750 mg. Somatomax contains a dose at least two-and-a-half times higher than that. Each serving includes 2,000 to 3,000 mg of Phenibut.

7.    And Hi-Tech *affirmatively recommends* that consumers take that dangerously high dose in a single sitting. In the "Suggested Use" box on Somatomax's webpage and packaging, Hi-Tech states: "Take 1 heaping scoop of Somatomax with 8 ounces of water 30 minutes before bedtime." Somatomax's label defines a "heaping scoop" as a single serving which, again, includes 2,000 to 3,000 mg of Phenibut.

8.    All this would alarm any reasonable consumer, and it is particularly concerning to Mr. McCool. Mr. McCool previously suffered from drug and alcohol addiction. But, to his great credit, he is now sober. He works hard to maintain that sobriety and, as part of these efforts, purposefully avoids addictive substances. He purchased Somatomax to assist with his sleep, believing that Somatomax was a simple dietary supplement. He never would have purchased Somatomax had he known that it contains an addictive, unlawful, prescription drug. Accordingly, Hi-Tech must compensate Mr. McCool for profiting at his expense under false pretenses and putting his health in danger.

9.    For similar reasons, Hi-Tech must reimburse all former Somatomax customers who fall within the putative classes defined in this suit.  In fact, Hi-Tech must go further.  The law demands that Hi-Tech pay consumers punitive damages, given that it fraudulently misrepresented its products and put their health at significant risk.

## II.    PARTIES

### A.    Plaintiff

10.    Plaintiff Jason McCool is a California resident.[1]  On July 24, 2024, Mr. McCool purchased a bottle of Somatomax from the ProBody Warehouse located at 3166 Midway Drive #112, San Diego, California 92110.  The bottle was priced at $39.95 and, including taxes, Mr. McCool paid a total of $43.05 for it.

11.    Before completing the purchase, Mr. McCool reviewed Somatomax's packaging.  He saw, on the bottle, that Somatomax was marketed as  "dietary supplement."   And he read, on the bottle's label, that Somatomax purportedly provides "Enhanced Sleep and a Feeling of Well-Being."  Mr. McCool also saw, on the bottle's packaging, that the "Suggested Use" for Somatomax was to "Take 1 heaping scoop of Somatomax® with 8 ounces of water 30 minutes before bedtime."

---

[1] Mr. McCool is in the process of moving to Arizona.  But he was a California resident at the time of each of his Somatomax purchases.

12.     Mr. McCool relied on each of the above statements in purchasing Somatomax and would not have purchased Somatomax "but for" those statements. Based on the statements, he reasonably believed: (a) that Somatomax is a dietary supplement, and that it is not (and does not contain) a synthetic prescription drug; (b) that Somatomax promotes healthy sleep and does not present a risk of causing insomnia; and (c) that it is safe to consume Somatomax in the dose and manner recommended in the "Suggested Use" box on Somatomax's packaging.

13.     The omissions from Somatomax's packaging were also "but for" causes of Mr. McCool's purchase.  He would not have purchased Somatomax if he had known it contained a synthetic prescription drug.  Nor would he have purchased Somatomax if he had known it contained a substance that cannot legally be included in a dietary supplement.  Nor would he have purchased Somatomax if he had known that taking it in its recommended dose and manner could cause significant side effects including insomnia, psychosis, seizures, and comas.  Perhaps most importantly: Mr. McCool would not have purchased Somatomax if he had known that it contained an ingredient with addictive qualities.

14.     After purchasing Somatomax, Mr. McCool consumed it.  He took it as directed: one scoop, with eight ounces of water, 30 minutes before bed.  He did so every night.

15.    On August 28, 2024, Mr. McCool purchased another bottle of Somatomax from the ProBody Warehouse located at 3166 Midway Drive #112, San Diego, California 92110.  The bottle was priced at $39.95.  Including taxes, Mr. McCool paid a total of $43.05 for it.  In making this purchase, Mr. McCool again relied on the statements and omissions listed in Paragraphs 11 through 13, above.  Those statements and omissions were "but for" causes of his purchase.  After purchasing Somatomax, Mr. McCool consumed it.  He took it as directed: one scoop, with eight ounces of water, 30 minutes before bed.  He did so every night.

16.    On September 25, 2024, Mr. McCool purchased another bottle of Somatomax from the ProBody Warehouse located at 3166 Midway Drive #112, San Diego, California 92110.  Again: the bottle was priced at $39.95.  And again, including taxes, Mr. McCool paid a total of $43.05 for the bottle.  In making this purchase, Mr. McCool again relied on the statements and omissions listed in Paragraphs 11 through 13, above.  Those statements and omissions were "but for" causes of his purchase.  After purchasing Somatomax, Mr. McCool consumed it.  He took it as directed: one scoop, with eight ounces of water, 30 minutes before bed. He did so every night.

17.    Taking Somatomax in this manner caused Mr. McCool to develop a tolerance for it.  Over time, he found that taking the recommended dose did not produce an effect as strong as when he started.  He ultimately chose to cease using

Somatomax.  At that point, he experienced withdrawal symptoms, including heightened levels of anxiety and irritability, and he had more difficulty sleeping than he had experienced before taking Somatomax.

**B.    Defendant**

18.    Defendant Hi-Tech Pharmaceuticals, Inc. is a domestic profit corporation whose principal place of business is 6015-B Unity Drive, Norcross, Georgia, 30071-2955.  Georgia is Hi-Tech's state of formation.

19.    Hi-Tech is the sole manufacturer of Somatomax.  It designed Somatomax's packaging and is solely responsible for the statements and omissions made on that packaging.

20.    Hi-Tech markets, distributes, and sells Somatomax throughout the U.S. directly from its website.  It also provides Somatomax to third-party retailers (including the ProBody Warehouse located at 3166 Midway Drive #112, San Diego, California 92110) to sell directly to consumers from physical locations and online.

21.    Before 2024, Hi-Tech charged $79.95 for the Somatomax that it sold directly on its website.[2]  Starting in 2024, Hi-Tech charged $37.95 for the Somatomax that it sold directly on its website.[3]

---

[2]    https://web.archive.org/web/20231002011657/https://hitechpharma.com/products/somatomax (web archive from October 2023).
[3]    https://web.archive.org/web/20240325014339/https://hitechpharma.com/products/somatomax (web archive from March 2024).

## III.    JURISDICTION AND VENUE

22.    This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332(a) because the amount in controversy exceeds $75,000 exclusive of interest and costs and there is diversity of citizenship between the parties.

23.    This Court also has subject matter jurisdiction over this matter under 28 U.S.C. § 1332(d) because this is a class action with more than 100 class members, there is diversity of citizenship among the parties, and the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

24.    This Court has personal jurisdiction over Hi-Tech because Hi-Tech's principal place of business is in the Northern District of Georgia and Hi-Tech maintains continuous and systematic contacts with Georgia.

25.    Venue is proper under 28 U.S.C. § 1391(b)(1) because Hi-Tech resides in the Northern District of Georgia.

26.    Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this lawsuit occurred in this judicial district.

27.    Further, venue is proper under 28 U.S.C. § 1391(b)(3) because Hi-Tech is subject to the Court's personal jurisdiction with respect to this lawsuit.

## IV.  FACTUAL ALLEGATIONS

### A.  Phenibut is a synthetic prescription drug that can cause life-altering and life-threatening side effects.

28.    Phenibut is a synthetic prescription drug.  The Soviet Union first developed it in the 1960s.[4]  Scientists hoped the drug would help "military personnel" to "overcome anxiety and improve cognitive function."[5]

29.    Phenibut's common chemical name is 4-amino-3-phenyl-butyric acid.[6] Phenibut is sometimes listed under a variety of other names, including "fenibut," "phenigam," "PGaba," "PhGaba," "Phenibut HCI," "Phenigamma," "Phenygam," "Phenylgam," "Phenyl-GABA," "4-Amino-3-phenylbutanoic acid," "β-benzenepropanoic acid," "beta-hydrocinnamic acid," and "β-phenyl-γ-aminobutyric acid."[7]

30.    Phenibut is structurally similar to gamma-aminobutyric acid ("GABA").[8]  GABA is a neurotransmitter that slows down brain functions by blocking specific signals in the central nervous system.  Because GABA slows brain

---

[4] Gurley, Bill, et al., *Phenibut: A Drug with One Too Many "Buts*,*"* BASIC & CLINICAL PHARMACOLOGY & TOXICOLOGY, Vol. 135, Iss. 4 (2024), https://tinyurl.com/2uk8tz8m.
[5] *Id.*
[6] David Owen, et al., *Phenibut (4-amino-3-phenyl-butyric acid): Availability, prevalence of use, desired effects and acute toxicity*, DRUG ALCOHOL REV. (Sept. 2016), https://pubmed.ncbi.nlm.nih.gov/26693960.
[7] *Phenibut in Dietary Supplements*, U.S. FOOD & DRUG ADMINISTRATION (July 12, 2023), https://tinyurl.com/4aenrhmy.
[8] Elizabeth Svoboda, *What Is Phenibut? About the Russian Cosmonaut Drug People Take to Reduce Anxiety*, DISCOVER MAGAZINE (Oct. 20, 2020), https://www.discovermagazine.com/health/phenibut-the-russian-cosmonaut-drug-you-can-buy-online-to-reduce-anxiety.

activity, it produces a calming effect. Phenibut can produce a similar effect by acting on the brain's GABA receptors. Accordingly, Phenibut is a "close cousin to drugs in the benzodiazepine family," like Xanax, "which also affect the brain's GABA receptors."[9]

31.     Though Phenibut resembles GABA, scientists designed Phenibut with an important difference. Unlike GABA, Phenibut can easily cross the blood-brain barrier.[10] This permits Phenibut to exert more powerful effects than GABA.[11] It has the "potency of a prescription-strength sedative."[12]

32.     Phenibut's potency and chemical structure come with significant risks. One is addiction. The danger of "Phenibut addiction" is "well-documented."[13] And "experts warn that the drug's addictive potential resembles that of benzo[diazepines]."[14] Benzodiazepines, themselves, are highly addictive; the government requires companies selling them to include prominent warnings

---

[9] *Id.*
[10] Christopher Stewart, et al., *A Systematic Review of Phenibut Withdrawals*, CUREUS (Sept. 6, 2024), https://tinyurl.com/3xdnf7pw.
[11] *Id.*
[12] John Murphy, *This Unregulated Russian Drug is Harming Americans*, MD LINX (Sept. 22, 2020), https://tinyurl.com/5rn32bsp.
[13] Gurley, Bill, et al., *Phenibut: A Drug with One Too Many "Buts,"* BASIC & CLINICAL PHARMACOLOGY & TOXICOLOGY, Vol. 135, Iss. 4 (2024), https://tinyurl.com/2uk8tz8m.
[14] Elizabeth Svoboda, *What Is Phenibut? About the Russian Cosmonaut Drug People Take to Reduce Anxiety*, DISCOVER MAGAZINE (Oct. 20, 2020), https://www.discovermagazine.com/health/phenibut-the-russian-cosmonaut-drug-you-can-buy-online-to-reduce-anxiety.

regarding their potential for addiction and abuse.[15]

33.    Phenibut addiction, otherwise known as "dependence," can occur remarkably quickly.  Using 2,000 to 3,000 mg per day for as little as one week can cause addiction.[16]  And smaller doses can have the same impact.  Taking 1,000 mg per day for one month can cause physical dependance and, upon cessation, withdrawal.[17]

34.    This withdrawal can be devastating.  Symptoms can include "delirium, hallucinations, and seizures."[18]    They can also include "insomnia, anger, psychomotor agitation, anxiety, tremor, myalgias, [and] palpitations."[19]

35.    Patients suffering from Phenibut withdrawal often require extreme intervention.  One systemic review showed that 44% of individuals suffering from Phenibut withdrawal had to be admitted to the intensive care unit of a hospital.[20]

---

[15] *FDA Requiring Boxed Warning Updated to Improve Safe Use of Benzodiazepine Drug Class*, U.S. FOOD & DRUG ADMINISTRATION (Sept. 23, 2020), https://www.fda.gov/drugs/drug-safety-and-availability/fda-requiring-boxed-warning-updated-improve-safe-use-benzodiazepine-drug-class.

[16] Ryan Feldman, et al., *A Systematic Review of Phenibut Withdrawal Focusing on Complications, Therapeutic Approaches, and Single Substance versus Polysubstance Withdrawal*, CLINICAL TOXICOLOGY (Nov. 2023), https://pubmed.ncbi.nlm.nih.gov/38112312.

[17] Bryan VanDreese, *Chronic Phenibut Use: Symptoms, Severe Withdrawal, and Recovery*, WISCONSIN MEDICAL JOURNAL (Feb. 28, 2022), https://wmjonline.org/wp-content/uploads/2022/121/1/vandreese.pdf.

[18] Feldman, Ryan et al., *A Systematic Review of Phenibut Withdrawal*, CLINICAL TOXICOLOGY, Vol. 61, Iss. 11 (2023), https://tinyurl.com/yfvkjuec.

[19] Gurley, Bill, et al., *Phenibut: A Drug with One Too Many "Buts*,*"* BASIC & CLINICAL PHARMACOLOGY & TOXICOLOGY, Vol. 135, Iss. 4 (2024), https://tinyurl.com/2uk8tz8m.

[20] Feldman, Ryan et al., *A Systematic Review of Phenibut Withdrawal*, CLINICAL TOXICOLOGY, Vol. 61, Iss. 11 (2023), https://tinyurl.com/yfvkjuec.

And 24% required intubation.[21]

36.     Just as concerning, some patients who experience Phenibut withdrawal are "non-responsive" to interventions.[22]  Take the following example describing a Phenibut withdrawal patient:

> [A] month-long ingestion of up to 5000 mg/day resulted in the development of severe abstinence syndrome 3 days after the last dose. The patient **remained unresponsive to all pharmacological interventions**, including diazepam, delorazepam, lorazepam, haloperidol, promazine, and even baclofen — a GABA agonist previously used to successfully treat phenibut withdrawal.  Despite these measures, the patient's condition worsened and resulted in the development of catatonic episodes.  Only after replacing haloperidol first with olanzapine and then risperidone did the patient's situation improve.  All symptoms finally resolved after 4 weeks.[23]

37.     Addiction and withdrawal are not the only significant risks associated with Phenibut use.  Phenibut consumers are also in danger of Phenibut intoxication, toxicity, and/or overdose.[24]  The symptoms can range "from sedation and decreased consciousness to agitation, delirium and psychosis," as well as "mydriasis, hypothermia, seizures, hypertension, and tachy- or bradycardia."[25]  Phenibut overdose can also cause comas and death.[26]

---

[21] *Id.*

[22] Gurley, Bill, et al., *Phenibut: A Drug with One Too Many "Buts*,*"* BASIC & CLINICAL PHARMACOLOGY & TOXICOLOGY, Vol. 135, Iss. 4 (2024), https://tinyurl.com/2uk8tz8m.

[23] *Id.* (emphasis added).

[24] *Id.*

[25] *Id.*

[26] *Notes from the Field: Phenibut Exposures Reported to Poison Centers — United States, 2009–2019*, U.S. CENTERS FOR DISEASE CONTROL AND PREVENTION, https://tinyurl.com/44eau3hb.

38.    Phenibut use can lead to an additional symptom that is pertinent to Hi-Tech's Somatomax sales, given that Somatomax is marketed as a sleep-aid.  The symptom is insomnia.  Insomnia is one of the *most common* side effects experienced by those seeking medical help for Phenibut use.[27]  And it is also one of the most common side effects of Phenibut withdrawal.[28]

39.    Notably, Phenibut abuse in the U.S. is rising.  In 2020, the CDC stated that the number of "reported calls" to U.S. poison centers concerning Phenibut "increased sharply" between 2009 and 2019.[29]  It said that "[m]ajor effects," which include "life-threatening [effects] or [those] resulting in significant disability or disfigurement," "occurred in one in eight (12.6%) [of those] reported exposures."[30]  And comas occurred in 6.2% of them.[31]  In 2024, the New York Times reported that Phenibut belongs to a "growing, unregulated class of potentially addictive products available in gas stations, convenience stores and smoke shops and across the internet" that are "alarm[ing] health officials."[32]

---

[27] Christopher Stewart, et a., *A Systematic Review of Phenibut Withdrawals*, CUREUS (Sept. 2024), https://pmc.ncbi.nlm.nih.gov/articles/PMC11456982.
[28] *Id.*
[29] *Notes from the Field: Phenibut Exposures Reported to Poison Centers — United States, 2009–2019*, U.S. CENTERS FOR DISEASE CONTROL AND PREVENTION, https://tinyurl.com/44eau3hb.
[30] *Id.*
[31] *Id.*
[32] Jan Hoffman, *"Gas-Station Heroin" Sold as Dietary Supplement Alarms Health Officials*, NEW YORK TIMES, https://tinyurl.com/mrcr5hkx.

**B.      Phenibut is criminally banned in multiple jurisdictions and cannot legally be sold in drugs or dietary supplements under U.S. state and federal law.**

40.      Because of its inherent risks, Phenibut is "illegal in Australia, France, the United Kingdom, Italy, Hungary, and Lithuania."[33]  Phenibut is also criminally banned in Alabama, where it is classified as a Schedule II controlled substance, like Fentanyl.[34]

41.      Moreover, the FDA has not approved Phenibut for sale as a drug, and the labelling requirements of the Federal Food, Drug, and Cosmetic Act ("FDCA") prohibit sales of dietary supplements that contain Phenibut.[35]

42.      Certain state laws contain the same prohibition, because they parallel—and expressly incorporate—the FDCA's standards.   For instance: California's Sherman Laws incorporate and parallel the FDCA's standards, prohibiting sales of dietary supplements that contain Phenibut.[36]

43.      In addition to passing the above laws, the government has taken affirmative steps to protect consumers from Phenibut-containing products.  In 2023, the FDA obtained a permanent injunction barring further sales of a beverage—called

---

[33] Bonnet, Udo, et al., *Phenibutan—an Illegal Food Supplement With Psychotropic Effects*, DEUTSCHES ARZTEBLATT INT. (2024), https://tinyurl.com/4wr4zr5w.
[34] AL Code § 20-2-25 (2024).
[35] *Phenibut in Dietary Supplements*, U.S. FOOD & DRUG ADMINISTRATION (July 12, 2023), https://www.fda.gov/food/information-select-dietary-supplement-ingredients-and-other-substances/phenibut-dietary-supplements.
[36] Cal. Health & Safety Code § 110100(a).

"Chill6"—that contained Phenibut.[37]

44.    Before that, the FDA sent several warning letters to companies that included Phenibut in dietary supplements.[38]  As the letters explained: "Declaring Phenibut in . . . product labeling as a dietary ingredient causes [the] product to be misbranded under section 403(a)(1) of the [FDCA]."[39]

45.    Like the FDA, the U.S. Department of Justice has sought to curb sales of Phenibut products.  In August 2023, it charged several related entities with unlawfully distributing Phenibut and similar "prescription drugs" with the "potential for harmful effect."[40]  The defendants in that matter had sold the "drugs to consumers as nootropic compounds" online.[41]  The matter resolved with a plea agreement.[42]

46.    The U.S. Customs and Border Patrol ("CBP") and U.S. Department of Defense ("DoD") also take steps police Phenibut use.  The CBP seizes shipments containing Phenibut.[43]  And the DoD bars service members from consuming

---

[37] Order of Permanent Injunction, *United States v. Marold*, No. 4:22-cv-11773 (D. Mass. June 2, 2023), ECF No. 28.

[38] *Phenibut in Dietary Supplements*, U.S. FOOD & DRUG ADMINISTRATION (July 12, 2023), https://www.fda.gov/food/information-select-dietary-supplement-ingredients-and-other-substances/phenibut-dietary-supplements (providing links to three warning letters).

[39] *Warning Letter to Atomixx*, U.S. FOOD & DRUG ADMINISTRATION (Apr. 10, 2019), https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/atomixx-576505-04102019.

[40] Information, *United States v. Centera Bioscience et al.*, No. 1:23-cr-00069 (D.N.H Aug. 16, 2023), ECF No. 1 ¶ 10.

[41] Plea Agreement, *United States v. Centera Bioscience et al.*, No. 1:23-cr-00069 (D.N.H Aug. 16, 2023), ECF No. 2 at 3.

[42] *Id.*

[43] *Cincinnati CBP Saves Lives by Stopping Dangerous and Unapproved Cosmetic Items from*

Phenibut products.[44]

### C.    Hi-Tech includes a high dose of Phenibut in Somatomax, which Hi-Tech illegally sells as a "dietary supplement."

47.    Though state and federal law prohibit it, and government agencies work hard to prevent it, Hi-Tech sells a Phenibut-containing product that it labels as a "dietary supplement."  The product, pictured below, is Somatomax.



48.    Somatomax not only contains Phenibut: it uses Phenibut as its "cornerstone ingredient" as Hi-Tech admits on its website.[45]    Hi-Tech also lists

---

*Reaching Consumers*, U.S. CUSTOMS AND BORDER PROTECTION (November 18, 2022), https://www.cbp.gov/newsroom/local-media-release/cincinnati-cbp-saves-lives-stopping-dangerous-and-unapproved-cosmetic.

[44] *Phenibut in Dietary Supplement Products*, OPERATION SUPPLEMENT SAFETY (March 7, 2022), https://www.opss.org/article/phenibut-dietary-supplement-products?utm.

[45] https://web.archive.org/web/20250829194400/https://hitechpharma.com/products/somatomax (Somatomax's sales webpage and packaging as of August 29, 2025).

Phenibut—under its scientific name, "4-amino-3-phenylbutyric acid"—as an ingredient on the wrap-around packaging that Hi-Tech places on Somatomax bottles:



49. Concerningly, the dose of Phenibut that Hi-Tech includes in Somatomax is very high. Where Phenibut is legal, its "recommended therapeutic dose is between 250–750 mg per day."[46] And the "[m]aximum single dose" recommended for adults in Russia is 750 mg.[47] Yet a single serving of Somatomax contains between 2,000 and 3,000 mg of Phenibut.[48]

50. So: each serving of Somatomax contains 2.6 to 12 times the recommended daily therapeutic dose of Phenibut and 2.6 to 4 times the maximum upper limit for a single Phenibut dose.

---

[46] *Pre-Review Report: Phenibut*, WORLD HEALTH ORGANIZATION (Sept. 8, 2021), available for download at www.who.int/publications/m/item/phenibut-critical-review-report.

[47] https://www.rlsnet.ru/drugs/fenibut-5083 (open in Google Chrome and hit "translate" at top of page) (last visited September 1, 2025).

[48] https://www.healthproductsforyou.com/p-hi-tech-pharmaceuticals-somatomax-dietary-supplement.html ("Each scoop is packed full of 2–3g of Phenibut.") (last visited August 30, 2025).

**D.    Hi-Tech does not disclose Phenibut's risks to Somatomax consumers.**

51.    Hi-Tech does not warn consumers about Somatomax's high dose of Phenibut.  Instead, it affirmatively recommends that consumers take that dose.  In the "Suggested Use" box on Somatomax's webpage and packaging, Hi-Tech states: "Take 1 heaping scoop of Somatomax with 8 ounces of water 30 minutes before bedtime."[49]  A "heaping scoop" is defined as a single serving on the label which, as noted, includes 2,000 to 3,000 mg of Phenibut.[50]  Hi-Tech does not include any dose-related warnings with these statements, nor do such warnings appear anywhere on Somatomax's sales page or packaging.[51]

52.    Hi-Tech also does not warn about Somatomax's addictiveness or its most serious side effects.  Indeed: Somatomax's sales page does not list any side effects at all.[52]  As for Somatomax's packaging: it just says that Somatomax "may cause drowsiness" and "excessive serving amounts may result in dizziness, nausea, euphoria, and diarrhea."[53]

53.    This omits several key facts.  For one: it omits that Somatomax's recommended serving size already contains an "excessive" amount of Phenibut.

---

[49] https://web.archive.org/web/20250829194400/https://hitechpharma.com/products/somatomax (Somatomax's sales webpage and packaging as of August 29, 2025); *supra* Section IV.C (showing Somatomax's wrap-around packaging).
[50] *Id.*
[51] *Id.*
[52] *Id.*
[53] *Id.*

And, while listing benign potential side effects like "dizziness," the packaging omits serious potential side effects like addiction, withdrawal, seizures, psychosis, and overdose-related comas and death.

54.     Somatomax's packaging contains other significant omissions.   For example: it fails to inform consumers that Somatomax contains a synthetic prescription drug that cannot lawfully be sold in dietary supplements.

55.     Somatomax's sales webpage and packaging have contained the same statements and omissions discussed in this suit, uniformly, at all times since January 29, 2017.[54]  They appeared on the packaging—as shown in Section IV.C, above— that Hi-Tech placed on Somatomax bottles during that time period.

### E.     Hi-Tech's statements and omissions regarding Somatomax materially mislead reasonable consumers.

56.     Hi-Tech's marketing of Somatomax is materially misleading to reasonable consumers and has been for years.  Reasonable consumers do not expect "dietary supplements" to include prescription drugs, like Phenibut.  Surveys prove this.  In an online 500-person survey, 72% of respondents said they would be "surprised" to learn that a product labeled as a "dietary supplement" contains a

---

[54]  https://web.archive.org/web/20170129051525/https://hitechpharma.com/products/somatomax (web archive from January 29, 2017 showing Somatomax's sales webpage); https://web.archive.org/web/20160811072606/https://hitechpharma.com/collections/muscle-strength (web archive from August 11, 2016 showing picture of Somatomax's packaging at the time); https://web.archive.org/web/20250829194400/https://hitechpharma.com/products/somatomax (recent web archive showing Somatomax's sales webpage and packaging as of August 29, 2025).

"prescription drug." In a similar survey, of the same size, 60% of respondents said they would be "surprised" to learn that a product labeled as a "dietary supplement" contains a "synthetic drug."

57.    Another survey demonstrates consumers' clear preference for safe, lawful supplements. In a survey of 600 dietary supplement consumers, 85% said they would not purchase a dietary supplement "after learning that it contains a substance that can cause psychosis"; 72% said they would not purchase a dietary supplement "after learning that it contains an illegal ingredient"; and 71% said they would not purchase a dietary supplement "after learning that it contains an addictive substance."

58.    Thus, by labeling Somatomax as a "dietary supplement" and omitting information about its content and side effects, Hi-Tech has misled its customers about product features about which they care deeply. This has helped Hi-Tech sell more Somatomax than it otherwise would have sold, and helped it sell Somatomax at prices higher than it otherwise could have charged. If consumers, including Mr. McCool, knew the truth about Somatomax, they would not have been willing to pay prices as high for the product. In fact: Mr. McCool, and other consumers, would not have been willing to purchase the product at all.

**F.    Hi-Tech knows or should know that its misrepresentations and omissions regarding Somatomax are deceptive.**

59.    Hi-Tech knows all this, and it has for years.  Specifically: Hi-Tech knew, at all times during the four years preceding the filing of this lawsuit (the "Relevant Period"), that the statements and omissions regarding Somatomax that are at-issue in this suit were false and misleading.  This is because Hi-Tech was well-aware of Phenibut's origins as a synthetic drug, and the impacts Phenibut can have on users, during the Relevant Period.  And Hi-Tech was also aware that a product containing a synthetic drug like Phenibut does not qualify as a dietary supplement according to the law governing dietary supplements and according to the common meaning of the term "dietary supplement."

60.    *First*, Hi-Tech was aware of Phenibut's origins, and the impacts it can have on users, throughout the Relevant Period.  This is because Hi-Tech conducted extensive background research into Phenibut before that period.  Hi-Tech conducted this research before releasing Somatomax® Ultra Concentrate ("Somatomax UC")—a product it no longer sells—in July 2013.

61.    This research taught Hi-Tech about Phenibut's chemical structure and origins.  In particular, Hi-Tech learned that Phenibut is a synthetic prescription drug created in the Soviet Union in the 1960s that has a chemical structure similar to

GABA.[55]

62.    Hi-Tech's Somatomax UC research also highlighted, to Hi-Tech, the history of products that had used Phenibut as an ingredient; the doses of Phenibut that those products used; and the impacts that different doses of Phenibut have on consumers.[56]  This taught Hi-Tech that Phenibut can have serious side effects, including those listed in this lawsuit, and that the Phenibut doses Hi-Tech includes in Somatomax (2,000 mg to 3000 mg) are dangerously high.[57]

63.    *Second*, during the Relevant Period, Hi-Tech was aware that a product containing a synthetic prescription drug like Phenibut does not qualify as a "dietary supplement" according to the law.  Before the Relevant Period, Hi-Tech received an FDA warning letter that explained the legal difference between a "dietary ingredient" (which can be lawfully included in a dietary supplement) and an "unsafe food additive" (a category of substance that cannot be lawfully included in a dietary supplement, under which Phenibut falls).[58]

---

[55] *See* https://web.archive.org/web/20130716201226/www.hitechpharma.com/products/ms_ somatomaxultra.html (web archive from July 16, 2013 version of Somatomax UC sales page stating: "Phenibut . . . was discovered in Russia during the 1960's.  It is a derivative of the neurotransmitter GABA and is capable of passing the blood brain barrier.").

[56] *Id.* ("All previous attempts by other supplement companies to make headway using phenibut (a very expensive compound) in a feel-good, sleep promoting supplement have failed, simply because these products contained pathetically low, cost-cutting dosages that disarmed the products of any benefit.  Hi-Tech, on the other hand, spared no expense to ensure that more than efficacious dosages of this cornerstone ingredient were large and in charge in Somatomax® Ultra Concentrate.").

[57] *See id.*

[58] Center for Food Safety and Applied Nutrition, *Warning Letter to Hi-Tech Pharmaceuticals*, U.S.

64.    *Third*, throughout the Relevant Period, Hi-Tech was aware that products containing synthetic drugs like Phenibut do not qualify as "dietary supplements" per the common meaning of that term.    Hi-Tech explicitly differentiated between the synthetic drug industry, on one hand, and the dietary supplement industry, on the other, on its website throughout the Relevant Period.[59] And Hi-Tech also described dietary supplements as products coming from natural sources in its marketing statements.[60]    For all these reasons: Hi-Tech knew its statements and omissions regarding Somatomax were false and misleading during the Relevant Period.

65.    Alternatively, for the above reasons and others, Hi-Tech *should have* known that its statements and omissions regarding Somatomax were false and misleading during the Relevant Period.    Hi-Tech has operated in the dietary

---

FOOD & DRUG ADMINISTRATION (April 10, 2019), www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/hi-tech-pharmaceuticals-560788-04102019.

[59] *Compare* https://web.archive.org/web/20200513001405/https://hitechpharma.com/pages/about (marketing Hi-Tech as "providing quality custom manufacturing services to the pharmaceutical, dietary supplement and beverage industries"), *with* https://hitechpharma.com/pages/about (marketing Hi-Tech using the same language) (last visited July 20, 2025).

[60] *Compare* https://web.archive.org/web/20200513001405/https://hitechpharma.com/pages/about ("Hi-Tech Pharmaceuticals revolutionary line of nutraceutical products is at the forefront of the dietary supplement industry. Hi-Tech holds a key position as the leader and the innovator of natural, proprietary, and preventative healthcare products. Hi-Tech boasts a portfolio of over fifty state-of-the-art nutritional supplements that offer real solutions in the areas of muscle and strength development, fat loss, sexual performance and healthcare. Hi-Tech develops world-class, novel nutraceuticals that are 'Found in Nature...Backed by Science™'. Hi-Tech is dedicated to setting a higher standard of scientific excellence for the dietary supplement industry."), *with* https://hitechpharma.com/pages/about (marketing Hi-Tech using the same language) (last visited July 20, 2025).

supplement industry for decades, and it has sold Somatomax to the public since May 30, 2006.[61]  Its market research since that time should have informed it that products containing synthetic prescription drugs do not qualify as "dietary supplements" under that term's ordinary meaning.

66.    And Hi-Tech had an affirmative duty to learn that such products do not qualify as "dietary supplements" under the law.  Hi-Tech was aware of this duty because the FDA explicitly told Hi-Tech, in a April 10, 2019 warning letter, that "[i]t is your responsibility to ensure that your firm complies with all requirements of federal law, including FDA regulations."[62]

### G.    Hi-Tech's misrepresentations and omissions place consumer health in danger and cause customers to purchase a product with no economic value.

67.    Hi-Tech's misrepresentations and omissions regarding Somatomax cause customers to purchase dangerous and economically worthless products.  As the Eleventh Circuit has recognized: "a dietary supplement that is deemed adulterated and cannot lawfully be sold has no value."  *Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1085 (11th Cir. 2019).

---

[61] *Somatomax Trademark Application*, Serial No. 77216438 (June 27, 2007) (available at https://tmsearch.uspto.gov/search/search-information via a "general search" for "Somatomax").

[62] *Warning Letter to Hi-Tech Pharmaceuticals, Inc.*, U.S. FOOD & DRUG ADMINISTRATION (April 10, 2019), https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/hi-tech-pharmaceuticals-560788-04102019.

68.    Somatomax's inclusion of Phenibut renders it "adulterated."  A dietary supplement "is adulterated if it is, bears, or contains any food additive that is unsafe."[63]  The FDA has "conducted comprehensive searches of the publicly available medical and scientific literature and determined there is no adequate technical evidence of safety and the general recognition of safety by experts qualified by scientific training and experience to evaluate the safety of Phenibut for use in food" products, which include dietary supplements.[64]  Accordingly, it has determined that Phenibut "is an unsafe food additive."[65]  And a federal court has endorsed this view.[66]  Somatomax, as noted, contains Phenibut—so, it is adulterated and valueless as a matter of law.

69.    Even setting the law aside: Phenibut has zero—or negative—economic value to Hi-Tech's customers.  Its customers seek simple dietary supplements to assist with sleep-issues.  Yet they receive a product that puts them in danger of a series of significant health detriments.

---

[63] Cal. Health & Safety Code § 110555; *see also* 21 U.S.C. § 342 (any food product, which include dietary supplements, "shall be deemed to be adulterated . . . if it is or if it bears or contains . . . any food additive that is unsafe").
[64] Complaint for Permanent Injunction, *United States v. Marold*, No. 22-cv-11773 (Oct. 17, 2022), ECF No. 2 ¶ 40.
[65] *Phenibut in Dietary Supplements*, U.S. FOOD & DRUG ADMINISTRATION, (July 12, 2023), https://tinyurl.com/37w2z2bu.
[66] Order of Permanent Injunction, *United States v. Marold*, No. 22-cv-11773 (June 2, 2023), ECF No. 28 ¶ 5 (declaring Phenibut to be an "unsafe food additive").

## V.    FEDERAL RULE OF CIVIL PROCEDURE 9(b) ALLEGATIOS

70.    Plaintiff is raising claims under both the "fraud" and "non-fraud" prongs of his causes of action.  Because fraud allegations must comply with Federal Rule of Civil Procedure 9(b), Plaintiff offers the below allegations concerning the "who, what, when, where, and how" of Hi-Tech's fraud.    *Carder v. Graco Children's Prods., Inc.*, 558 F. Supp. 3d 1290, 1310 (N.D. Ga. 2021).

71.    **Who:**       Hi-Tech Pharmaceuticals, Inc. committed the at-issue fraud.

72.    **What:** Hi-Tech committed the fraud by making material false statements, misrepresentations, and omissions regarding Somatomax that caused consumers, including Plaintiff, to purchase the product under false pretenses.  The false statements and misrepresentations included Hi-Tech's assertions that Somatomax is a "dietary supplement"; that it provides "Enhanced Sleep and a Feeling of Well-Being"; and that its proper "Suggested Use" is to "Take 1 heaping scoop of Somatomax® with 8 ounces of water 30 minutes before bedtime."  As for the omissions: Hi-Tech omitted that Somatomax contains a substance that cannot lawfully be sold in dietary supplements; that Somatomax contains a synthetic prescription drug; that Somatomax is not safe to take in its recommended manner and dose; and that Somatomax contains a substance (Phenibut) that is addictive and can cause serious side effects, including but not limited to withdrawal, psychosis,

hallucinations, delirium, seizures, comas, insomnia, and overdose-related death.

73.    **When:** Hi-Tech made these false statements, misrepresentations, and omissions continuously since January 29, 2017 and at all times during the Relevant Period,[67] including the dates on which Plaintiff purchased Somatomax (on July 24, 2024, August 28, 2024, and September 25, 2024).[68]

74.    **Where and How:** Hi-Tech made these false statements, misrepresentations, and omissions uniformly on the packaging for Somatomax and on Somatomax's sales webpage.  Hi-Tech sold Somatomax directly to consumers on its website, on third-party websites, and through third-party retail locations, including the ProBody Warehouse located at 3166 Midway Drive #112, San Diego, California 92110, at which Mr. McCool made his Somatomax purchases.

## VI.    CLASS ACTION ALLEGATIONS

75.    Plaintiff seeks to represent a class (the "Nationwide Class") of all individuals who, in the United States of America, purchased Somatomax at any time within the limitations periods applicable to the below-defined claims of the Nationwide Class.

---

[67]    https://web.archive.org/web/20170129051525/https://hitechpharma.com/products/somatomax (web archive from January 29, 2017 showing Somatomax's sales webpage); *see also* https://web.archive.org/web/20160811072606/https://hitechpharma.com/collections/muscle-strength (web archive from August 11, 2016 showing picture of Somatomax's packaging at the time).

[68] These purchases were for (in chronological order) the Snow Cone, Lemon Drop, and Rocket Pop flavors of Somatomax.

76.    Plaintiff also seeks to represent a sub-class (the "California Class" and, collectively with the Nationwide Class, the "Classes") of all individuals who, in the State of California, purchased Somatomax at any time within the limitations periods applicable to the below-defined claims of the California Class.

77.    The Classes meet the certification prerequisites of Federal Rule of Civil Procedure 23(a).

78.    The Classes' members are too numerous for practicable joinder, given that, during the limitations periods applicable to Plaintiff's and the Classes' claims, Hi-Tech sold approximately one hundred thousand bottles of Somatomax nationwide per year and approximately ten thousand of bottles of Somatomax in California per year (meaning there are likely tens or hundreds of thousands of members of the Classes). Multiplying these numbers by the price of Somatomax during the Relevant Period (approximately $40 per bottle starting in 2024 and approximately $80 per bottle before 2024[69]) shows that the Classes' damages far exceed the relevant jurisdictional amounts.

79.    There are also questions of law and fact common to the Classes, such as whether the representations and omissions Hi-Tech has made regarding

---

[69] https://web.archive.org/web/20231002011657/https://hitechpharma.com/products/somatomax (web archive from October 2, 2023 listing Somatomax at $79.95); https://web.archive.org/web/20240325014339/https://hitechpharma.com/products/somatomax (web archive from March 25, 2024 listing Somatomax at $37.95); https://hitechpharma.com/products/somatomax (current Somatomax page listing it for sale at $37.95) (last visited October 2, 2025).

Somatomax are, in fact, false or misleading; whether those representations and omissions concern information material to reasonable consumers; and whether Hi-Tech knew or should have known that its representations and omissions were false or misleading during the Relevant Period.

80.    Plaintiff's claims are typical of the Classes' claims because they arise from the same alleged misrepresentations and omissions, and they depend on the same legal theories.

81.    Further, Plaintiff and his counsel are adequate representatives of the above-defined Classes.  Plaintiff has suffered the same injury as members of the Classes (he purchased a product at a price artificially inflated by Hi-Tech's misrepresentations and omissions and/or purchased a product that he would not have purchased at all but for Hi-Tech's misrepresentations and omissions); Plaintiff has no conflicts of interest with members of the Classes; and Plaintiff's counsel is highly experienced in class action litigation, including consumer class action litigation.

82.    The Classes also meet the certification requirements of Federal Rule of Civil Procedure 23(b)(3).  Questions of law and fact common to the Classes' members predominate over any questions affecting only individual members, given that this case hinges on whether the uniform statements made on Somatomax's webpage and packaging are false, affirmatively misleading, or misleading by omission.  And a class action is superior to other available methods for adjudicating

this controversy. It will promote fairness, justice, and efficiency, as well as reduce litigation costs and duplicative litigation stemming from the many Somatomax sales that Hi-Tech has made in California and nationwide. And because the damages individual members of the Classes suffered are lower than the costs of bringing an individual suit, members of the Classes are highly unlikely to receive any relief outside of a class action, making this case exceptionally well-suited for class treatment.

## VII.  CAUSES OF ACTION

83.    Plaintiff seeks the following relief based on the following causes of action.

**First Cause of Action**
**Violation of the California Consumer Legal Remedies Act**
**(Brought by Plaintiff on Behalf of the California Class)**

84.    Plaintiff incorporates by reference and realleges here all foregoing paragraphs of this Complaint.

85.    Under the California Consumer Legal Remedies Act ("CLRA"), the following is "unlawful": "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have," and "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." Cal. Civ. Code §§ 1770(a)(5), 1770(a)(7).

86.    Hi-Tech violated these provisions of the CLRA.  During the Relevant Time Period, Hi-Tech made multiple false or misleading statements and omissions on Somatomax's packaging and sales webpage.  They included the following.

- Hi-Tech marketed Somatomax as a "dietary supplement."  This was false, and materially misleading, for several independent reasons: (a) reasonable consumers do not expect dietary supplements to include synthetic prescription drugs, and Somatomax contains a synthetic prescription drug; (b) reasonable consumers expect that products advertised as "dietary supplements" qualify as dietary supplements under applicable state laws, and Somatomax does not so qualify; (c) reasonable consumers expect that products advertised as "dietary supplements" are safe to consume without consulting a medical professional, and Somatomax is not safe to consume without consulting a medical professional; and (d) reasonable consumers do not expect that products advertised as "dietary supplements" can cause life-altering and life-threatening side effects, but Somatomax can cause life-altering and life-threatening side effects.

- Hi-Tech marketed Somatomax by stating that its "Suggested Use" is to "Take 1 heaping scoop of Somatomax®"—which contains 2000–3000 mg of Phenibut—"with 8 ounces of water 30 minutes before bedtime."  This was materially misleading.  Reasonable consumers believe that taking a dietary supplement as directed in a "Suggested Use" box is safe.  But it is not safe to take Somatomax as directed in its "Suggested Use" box.  Doing so can result in life-altering and life-threatening side effects, such as addiction, withdrawal, psychosis, coma, and overdose-related death, which Hi-Tech failed to disclose.

- Hi-Tech marketed Somatomax by stating that it "Promotes a Desirable Feel-Good Experience" and "Enhanced Sleep and Feeling of Well-Being." This was materially misleading because Hi-Tech did not disclose that taking Somatomax can result in insomnia, as well as life-altering and life-threatening side effects, such as addiction, withdrawal, psychosis, coma, and overdose-related death.

87.    Hi-Tech's misrepresentations and omissions caused injury to Plaintiff and the California Class.  Those misrepresentations and omissions permitted Hi-

Tech to sell Somatomax at prices higher than it otherwise would have been able to sell it. This heightened price was charged both to those who saw and relied on Hi-Tech's misrepresentations and omissions and those who did not. Thus, Plaintiff and the California Class suffered injury in the form of a price premium.

88.    Hi-Tech intended for consumers, including Plaintiff and members of the California Class, to rely on its misrepresentations and omissions so that they would purchase Somatomax and do so at a price premium. Hi-Tech also made its misrepresentations and omissions knowingly. It knew or should have known that its statements and omissions concerning Somatomax were false or misleading.

89.    Hi-Tech's omissions included omissions contrary to statements Hi-Tech made and omissions of facts Hi-Tech was obligated to disclose (which related to unreasonable safety hazards).

90.    Hi-Tech has no formal location or place of business within California. So, on August 26, 2025, through counsel, Plaintiff sent the CLRA demand letter attached to this Complaint to the following address: Hi-Tech Pharmaceuticals, Inc., 6015 B Unity Drive, Norcross, GA 30071. **Exhibit 1, Pre-Suit Notice Letter**. Plaintiff sent the letter via certified mail, return receipt requested. The letter was delivered to Hi-Tech on September 2, 2025. Hi-Tech has not rectified or taken steps toward rectifying its CLRA violations.

91.    The Northern District of Georgia is a proper place for the trial of this suit's CLRA claims under Section 1780(d) of the California Civil Code because Hi-Tech resides in and has its principal place of business in the Northern District of Georgia.  **Exhibit 2, Affidavit of John J. Frawley**.

92.    As a result of the above, Plaintiff and the California Class each seek and are entitled to: (a) actual damages; (b) statutory damages; (c) punitive damages; (d) restitution; (e) reasonable costs and attorney's fees; and (f) any other relief the Court deems proper.  Cal. Civ. Code §§ 1780, 1782.

**Second Cause of Action**
**Violation of the California False Advertising Law**
**(Brought by Plaintiff on Behalf of the California Class)**

93.    Plaintiff incorporates by reference and realleges here all foregoing paragraphs of this Complaint.

94.    Under California's False Advertising Law ("FAL"), it is "unlawful" to make "untrue or misleading" statements which are "known, or which by the exercise of reasonable care should be known, to be untrue or misleading" with the "intent directly or indirectly to dispose of real or personal property."  Cal. Bus. & Prof. Code § 17500.

95.    Hi-Tech violated the FAL.  During the Relevant Time Period, Hi-Tech made multiple false or misleading statements on Somatomax's sales webpage and packaging.  They included the following.

- Hi-Tech marketed Somatomax as a "dietary supplement." This was false, and materially misleading, for several independent reasons: (a) reasonable consumers do not expect dietary supplements to include synthetic prescription drugs, and Somatomax contains a synthetic prescription drug; (b) reasonable consumers expect that products advertised as "dietary supplements" qualify as dietary supplements under applicable state laws, and Somatomax does not so qualify; (c) reasonable consumers expect that products advertised as "dietary supplements" are safe to consume without consulting a medical professional, and Somatomax is not safe to consume without consulting a medical professional; and (d) reasonable consumers do not expect that products advertised as "dietary supplements" can cause life-altering and life-threatening side effects, but Somatomax can cause life-altering and life-threatening side effects.

- Hi-Tech marketed Somatomax by stating that its "Suggested Use" is to "Take 1 heaping scoop of Somatomax®"—which contains 2000–3000 mg of Phenibut—"with 8 ounces of water 30 minutes before bedtime." This was materially misleading. Reasonable consumers believe that taking a dietary supplement as directed in a "Suggested Use" box is safe. But it is not safe to take Somatomax as directed in its "Suggested Use" box. Doing so can result in life-altering and life-threatening side effects, such as addiction, withdrawal, psychosis, coma, and overdose-related death, which Hi-Tech failed to disclose.

- Hi-Tech marketed Somatomax by stating that it "Promotes a Desirable Feel-Good Experience" and "Enhanced Sleep and Feeling of Well-Being." This was materially misleading because Hi-Tech did not disclose that taking Somatomax can result in insomnia, as well as life-altering and life-threatening side effects, such as addiction, withdrawal, psychosis, coma, and overdose-related death.

96.     Hi-Tech's misrepresentations and omissions caused injury to Plaintiff and the California Class. Those misrepresentations and omissions permitted Hi-Tech to sell Somatomax at prices higher than it otherwise would have been able to sell it. This heightened price was charged both to those who saw and relied on Hi-Tech's misrepresentations and omissions and those who did not. Thus, Plaintiff and

the California Class suffered injury in the form of a price premium.

97.    Hi-Tech intended for consumers, including Plaintiff and members of the California Class, to rely on its misrepresentations and omissions so that they would purchase Somatomax and do so at a price premium.  Hi-Tech also made its misrepresentations and omissions knowingly.  It knew or should have known that its statements and omissions concerning Somatomax were false or misleading.

98.    As a result, Plaintiff and the California Class each seek and are entitled to: (a) restitution, (b) reasonable costs and attorney's fees, and (c) any other relief the Court deems proper.  Cal. Bus. & Prof. Code § 17535; Cal. Civ. Proc. Code § 1021.5.

**Third Cause of Action**
**Violation of the California Unfair Competition Law**
**(Brought by Plaintiff on Behalf of the California Class)**

99.    Plaintiff incorporates by reference and realleges here all foregoing paragraphs of this Complaint.

100.   Hi-Tech has violated, and continues to violate, the unlawful, unfair, and fraudulent prongs of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et. seq.*

*Violation of UCL's Unlawful Prong*

101.   Hi-Tech has violated the UCL's "unlawful" prong because Hi-Tech has violated two provisions of California's Sherman Laws, as well as other consumer protection laws.

102.   *First*, Hi-Tech has violated the Sherman Laws' "adulteration" provision.  Per that provision, it is "unlawful" to "manufacture, sell, deliver, hold, or offer for sale any food that is adulterated."  Cal. Health & Safety Code § 110620; *see also* 21 U.S.C. § 331 (prohibiting the sale of "food" that is "adulterated").  A food, including a dietary supplement,[70] "is adulterated if it is, bears, or contains any food additive that is unsafe."  Cal. Health & Safety Code § 110555; *see also* 21 U.S.C. § 342 (a food product "shall be deemed to be adulterated . . . if it is or if it bears or contains . . . any food additive that is unsafe").  A substance is a food "additive" if it can serve as a "component . . . of any food" *and* it "is not generally recognized . . . to be safe."  21 U.S.C. § 321(s).  If a substance qualifies as an "additive" under this standard, it is also "unsafe" as a matter of law unless it is subject to an "exemption," "regulation," or "notification" rendering it safe under 21

---

[70] Dietary supplements are a category of "food" under the Sherman Laws and the FDCA.  21 U.S.C. § 321(ff) (a "dietary supplement shall be deemed to be a food within the meaning of this chapter"); Cal. Code Regs. tit. 17, § 10200 ("A dietary supplement may be a food or a drug, or both a food and a drug, as these terms are defined in Health and Safety code sections 109935 and 109925.").

U.S.C. § 348.

103.   Under these standards, Phenibut is an unsafe food additive.  Phenibut serves as a component of food products like Somatomax.  Phenibut is not generally recognized as safe, legally, because (a) it was not commonly used in foods prior to January 1, 1958 and (b) qualified scientific experts and available scientific evidence do not generally recognize Phenibut as being safe for use in food products.[71]  Finally, Phenibut is not subject to any exemption, regulation, or notification that renders it safe under 21 U.S.C. § 348.  As a result, it is an unsafe food additive.  *See, e.g.*, *Phenibut in Dietary Supplements*, U.S. FOOD & DRUG ADMINISTRATION (July 12, 2023), https://tinyurl.com/37w2z2bu (stating that Phenibut "does not meet the statutory definition of a dietary ingredient and is an unsafe food additive"); Order of Permanent Injunction, *United States v. Marold*, No. 22-cv-11773 (June 2, 2023), ECF No. 28 ¶ 5 (declaring Phenibut to be an "unsafe food additive").

104.   Because Phenibut is an unsafe food additive, and Somatomax contains Phenibut, Somatomax is unsafe and adulterated under the Sherman Laws, which renders Hi-Tech's Somatomax sales "unlawful."  Cal. Health & Safety Code §§ 110555, 110620; *see also* 21 U.S.C. §§ 331, 342.

---

[71] 21 U.S.C. § 321(s); *see also* Complaint for Permanent Injunction, *United States v. Marold*, No. 22-cv-11773 (Oct. 17, 2022), ECF No. 2 ¶ 40 ("FDA conducted comprehensive searches of the publicly available medical and scientific literature and determined there is no adequate technical evidence of safety and the general recognition of safety by experts qualified by scientific training and experience to evaluate the safety of Phenibut for use in food.  Therefore, Phenibut is not GRAS [generally recognized as safe] for use in food.").

105.  *Second*, Hi-Tech has violated the Sherman Laws' "misbranding" provision.  Under the Sherman Laws: "Any food is misbranded if its labeling is false or misleading in any particular."  Cal. Health & Safety Code § 110660; 21 U.S.C. § 343(a) (stating that "food" is "misbranded" if "its labeling is false or misleading in any particular").  Labeling is false or misleading under this standard if it declares, as an ingredient in a dietary supplement, a substance that does not qualify as a "dietary ingredient."  "Phenibut is a substance that does not meet the statutory definition of a dietary ingredient."[72]  Accordingly, "any dietary supplements that declare phenibut as a dietary ingredient are misbranded."[73]  Somatomax declares Phenibut as a dietary ingredient, so it is misbranded, meaning Hi-Tech has violated the Sherman Laws' misbranding provision and the UCL's "unlawful" prong.

106.  *Third*, Hi-Tech has violated the UCL's unlawful prong because Hi-Tech's actions violated the CLRA and the FAL, for reasons outlined above.

### Violation of UCL's Unfair Prong

107.  Hi-Tech violated the unfair prong of the UCL by making false and misleading statements about Somatomax and by omitting material information from its packaging and sales webpage.

---

[72] *Warning Letter to Atomixx*, U.S. Food & Drug Administration (April 10, 2019), https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/atomixx-576505-04102019.
[73] *Id.*

108.   Hi-Tech profited enormously as a result of its misrepresentations and omissions by charging a price premium it otherwise would have been unable to charge for Somatomax and by selling more Somatomax than it otherwise would have been able to sell.

109.   Plaintiff and other consumers suffered substantial injury as a result because they would not have purchased Somatomax absent Hi-Tech's misrepresentations and omissions or would not have paid a price as high absent those misrepresentations and omissions.

110.   No benefit to Plaintiff, consumers, or the principles of competition arose from Hi-Tech's misrepresentations and omissions, which served only to mislead consumers and unfairly enrich Hi-Tech.  Hi-Tech's misrepresentations and omissions were immoral, unethical, and oppressive.

*Violation of UCL's Fraudulent Prong*

111.   Hi-Tech violated the fraudulent prong of the UCL by intentionally and knowingly making misrepresentations and omissions about Somatomax that were likely to deceive reasonable consumers, on which Plaintiff, members of the California Class, and other consumers relied in purchasing Somatomax, and which caused Plaintiff, the California Class, and other consumers injury in the form of a purchase they otherwise would not have made and/or a purchase at a price premium.

112.   As a result, Plaintiff and members of the California Class each seek and are entitled to: (a) restitution, (b) reasonable costs and attorney's fees, and (c) any other relief the Court deems proper.  Cal. Bus. & Prof. Code § 17203; Cal. Civ. Proc. Code § 1021.5.

**Fourth Cause of Action**
**Breach of Express Warranty**
**(Brought by Plaintiff on Behalf of the California Class)**

113.   Under California law, a consumer can allege a breach of express warranty claim by alleging a defendant "(1) made an affirmation of fact or promise or provided a description of its goods; (2) the promise or description formed part of the basis of the bargain; (3) the express warranty was breached; and (4) the breach caused injury to the plaintiff."  *Corbett v. PharmaCare U.S., Inc.*, 567 F. Supp. 3d 1172, 1199 (S.D. Cal. 2021); Cal. Com. Code § 2313.

114.   Hi-Tech made several affirmations of fact in describing Somatomax.  It affirmed that Somatomax is a "dietary supplement," that Somatomax promotes "enhanced sleep and [a] feeling of well-being," and that a single serving of Somatomax can be safely taken "with 8 ounces of water 30 minutes before bedtime."

115.   These affirmations formed part of the basis of Mr. McCool's bargain (he would not have purchased Somatomax but for the affirmations).

116.   Yet Somatomax did not conform to the affirmations of fact.  It is not a "dietary supplement" under the law or under the common meaning of that term,

because it contains Phenibut, an unlawful synthetic prescription drug. Nor does Somatomax promote enhanced sleep and a feeling of well-being, given that it is a dangerous substance that can cause insomnia. Nor is it safe to take Somatomax in its suggested manner, because of the high does of Phenibut that Somatomax contains.

117. Lastly, Hi-Tech's breaches caused injury to Plaintiff: he spent money that he otherwise would not have spent, and paid an unearned "price premium" for Somatomax.

118. Mr. McCool notified Hi-Tech of its breach of express warranty via a letter sent by his counsel on August 26, 2025 (which was delivered to Hi-Tech on September 2, 2025). **Exhibit 1, Pre-Suit Notice Letter**. Mr. McCool sent this letter through counsel within a reasonable time after he learned of Hi-Tech's warranty breaches. Mr. McCool first learned of those breaches on August 7, 2025.

119. As a result, Plaintiff and members of the California Class each seek and are entitled to the "difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted," Cal. Com. Code § 2714(2), as well as incidental and consequential damages, Cal. Com. Code § 2715.

## Fifth Cause of Action
## Breach of Implied Warranty
### (Brought by Plaintiff on Behalf of the California Class)

120.   Under California law, consumer goods are subject to an "implied" warranty that they are "merchantable."  Cal. Com. Code § 2314(1).  "Goods to be merchantable must be at least such as (a) Pass without objection in the trade under the contract description; and (b) In the case of fungible goods, are of fair average quality within the description; and (c) Are fit for the ordinary purposes for which such goods are used; and (d) Run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and (e) Are adequately contained, packaged, and labeled as the agreement may require; and (f) Conform to the promises or affirmations of fact made on the container or label if any."  *Id.* § 2314(2).

121.   Somatomax is not merchantable under the foregoing definition.  It is not fit for the ordinary purpose for which it is sold—human consumption in the recommended manner and dose—due to its Phenibut content.  It also is not adequately packaged and labeled, and does not conform to the promises or affirmations of facts made on the container, for the reasons outlined in this Complaint.

122.   Mr. McCool notified Hi-Tech of its breach of implied warranty via a letter sent by his counsel on August 26, 2025 (which was delivered to Hi-Tech on

September 2, 2025).  **Exhibit 1, Pre-Suit Notice Letter**.  Mr. McCool sent this letter

through counsel within a reasonable time after he learned of Hi-Tech's warranty

breaches.  Mr. McCool first learned of those breaches on August 7, 2025.

123.    Though Mr. McCool purchased Somatomax from a third-party retailer,

he need not stand in direct privity with Hi-Tech to proceed with his breach of implied

warranty claim.  Mr. McCool "relie[d] on [the] written labels or advertisements of

[the] manufacturer," Hi-Tech, in purchasing Somatomax.  *Clemens v.*

*DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008).  Besides, Somatomax

is intended for human consumption but is not fit for human consumption—it poses

a risk to human health, meaning the "foodstuffs" privity exception applies to this

case. *Ottesen v. Hi-Tech Pharms., Inc.*, No. 19-cv-07271, 2024 WL 5205539, at *14

(N.D. Cal. Dec. 23, 2024).

124.    As a result, Plaintiff and members of the California Class each seek and

are entitled to the "difference at the time and place of acceptance between the value

of the goods accepted and the value they would have had if they had been as

warranted," Cal. Com. Code § 2714(2), as well as incidental and consequential

damages, Cal. Com. Code § 2715.

### Sixth Cause of Action
### Unjust Enrichment/Restitution
### (Brought by Plaintiff on Behalf of the Classes)

125.    Plaintiff incorporates by reference and realleges here all foregoing

paragraphs of this Complaint.

126.   Causes of action for unjust enrichment/restitution[74] are viable where a defendant has received and unjustly retained a benefit at the expense of another.

127.   Hi-Tech has received benefits from Plaintiff and the Classes stemming from Hi-Tech's misrepresentations and omissions regarding Somatomax. Hi-Tech sold more Somatomax than it would have sold absent those misrepresentations and omissions, given that Plaintiff and members of the Classes would not have purchased Somatomax but for those misrepresentations and omissions.

128.   Hi-Tech also sold Somatomax at higher prices than it could have charged absent its misrepresentations and omissions, due to the artificially inflated demand for Somatomax that Hi-Tech's misrepresentations and omissions created, and due to Hi-Tech's perception that it could set the prices for Somatomax higher due to Hi-Tech's misrepresentations and omissions based on Hi-Tech's market research. Thus, Hi-Tech has received a benefit in the form of unearned profits from Plaintiff and members of the Classes.

129.   Hi-Tech's enrichment has been to Plaintiff's and the Classes' detriment.   In purchasing Somatomax, Plaintiff relied on the statements and

---

[74] "There is some debate about whether unjust enrichment is a cause of action in California." *Melkonian Enterprises, Inc. v. Sun-Maid Growers of California*, No. F084479, 2023 WL 8747539, at *26 (Cal. Ct. App. Dec. 19, 2023), *review denied* (Mar. 20, 2024).   "Courts generally agree, however, that 'unjust enrichment' is synonymous with restitution and often treat it as a 'quasi-contract claim seeking restitution.'"   *Id.*

omissions on Somatomax's packaging, and he would not have purchased Somatomax but for those statements and omissions. The same is true of members of the Classes. And all members of the Classes purchased Somatomax at a price premium attributable to Hi-Tech's misrepresentations and omissions.

130.   Therefore, Plaintiff and members of the Classes have been harmed economically in that they paid for products they would not have bought or paid higher prices for products than they would have paid but for Hi-Tech's misconduct.

131.   It would be unjust for Hi-Tech to retain its unearned profits at the expense of Plaintiff and members of the Classes. Hi-Tech's misrepresentations and omissions were knowingly deceptive.

132.   And it would violate fundamental principles of justice, equity, and good conscience to permit Hi-Tech to retain the benefits of its knowing misrepresentations and omissions at the expense of Plaintiff and members of the Classes.

133.   As a result, Plaintiff and members of the Classes each seek and are entitled to restitution, disgorgement, and any other relief the Court deems proper under their states' respective laws governing unjust enrichment/restitution.

## PRAYER FOR RELIEF AND DEMAND FOR JURY TRIAL

WHEREFORE, Plaintiff, individually and on behalf of all similarly situated persons, demands a jury trial for all claims so triable and respectfully requests that the Court grant the following relief:

A.      Certification of this case as a class action pursuant to Federal Rule of Civil Procedure 23;

B.      Designation of Plaintiff as the class representative of the above-defined Classes and designation of counsel of record as Class Counsel for the Classes;

C.      A declaratory judgment that the practices complained of herein are unlawful;

D.      An award of actual damages, punitive damages, restitution, and other relief provided for under the foregoing causes of action as set forth above;

E.      An award of attorneys' fees and costs incurred in this action, including expert fees;

F.      Pre-judgment and post-judgment interest, as provided by law; and

G.      All other relief that this Court deems necessary, just, and proper.

Dated: October 3, 2025                    Respectfully submitted,

                                          */s/ John J. Frawley*
                                          One of Plaintiff's Attorneys

                                          Douglas M. Werman (*pro hac vice*
                                          motion forthcoming)
                                          John J. Frawley (*pro hac vice* motion
                                          forthcoming)
                                          **WERMAN SALAS P.C.**
                                          77 W. Washington St., Suite 1402
                                          Chicago, Illinois 60602
                                          Phone No.: (312) 419-1008
                                          dwerman@flsalaw.com
                                          jfrawley@flsalaw.com

*/s/ Jeffrey B. Sand*
One of Plaintiff's Attorneys

Jeffrey B. Sand
Andrew L. Weiner
**WEINER & SAND LLC**
6065 Roswell Rd, Suite 700-121
Atlanta, Georgia 30328
Phone No.: (404) 205-5029
js@wsjustice.com
aw@wsjustice.com

*Attorneys for Plaintiff and the
Putative Classes*